# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRI LYNN TUCKER, Individually, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-04-GKF-PJC |
| | ) |
| DANIEL HANEY, Individually, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION AND ORDER

Before the court is the Motion for Summary Judgment [Dkt. #11] filed by defendant Daniel Haney ("Haney"). Plaintiff Terri Lynn Tucker ("Tucker") opposes the motion.

On September 25, 2010, Officer Jay Mobley, a Glenpool police officer, pulled over a vehicle for a traffic violation. Haney, a Glenpool police officer on traffic patrol nearby, heard Mobley radio that he was in foot pursuit of the driver, who had fled on foot. Haney proceeded to the site of the traffic stop to assist with three passengers in the car while Mobley pursued the driver. Tucker, whose son was one of those passengers, arrived at the scene, and an altercation between Haney and Tucker ensued. Tucker was arrested and charged in Tulsa County District Court with assault and battery on a police officer. After a preliminary hearing, she was bound over for trial. Ultimately, the charges were dropped.

Tucker sued Haney pursuant to 42 U.S.C. § 1983 for use of excessive force and "violating the Statutes of the State of Oklahoma concerning the lawful use of force by law

enforcement personnel." [Dkt. #1, Complaint, ¶18].[1] In the "operative facts" section of her Complaint, Tucker also alleged she was arrested without probable cause and maliciously prosecuted, and that Haney's actions were intentional, arbitrary and conscience shocking. [*Id.*, ¶¶10, 13-15]. Haney seeks summary judgment on all claims. Tucker responded only with respect to the § 1983 excessive force claim. Further, she stated, "For clarity's sake, the Plaintiff is focusing her excessive force claim" on what she characterized as "the initial headslam into the concrete roadway." [Dkt. #15 at 19].

## I. Material Facts

Haney was certified as a peace officer in the State of Oklahoma in 2007 by the Oklahoma Council on Law Enforcement Education and Training ("CLEET"). He has been employed as a police officer by the City of Glenpool since 2007. On September 25, 2010, he was on duty and acting under color of law when he encountered the plaintiff. Haney responded to another officer's call for assistance at the location of a traffic stop. A vehicle with multiple occupants had been pulled over and the driver of the vehicle fled on foot, leaving the other occupants sitting in the car. Officer Jay Mobley asked Haney to watch the other occupants and obtain identification from them.

While Haney was standing in front of Officer Mobley's patrol car, waiting and visiting with one of the occupants, Christopher Bruce, he observed a vehicle pull up behind his patrol car, which was parked behind Officer Mobley's car. A white female exited the driver's side of

---

[1] Tucker initially filed suit in this court on May 16, 2011, naming the City of Glenpool and Haney in Case No. 11-CV-301-JED-TLW. The parties filed a Joint Stipulation of Dismissal of Defendant City of Glenpool on August 24, 2012 [Dkt. #30] and a Joint Stipulation of Dismissal of Defendant Daniel Haney on January 4, 2013. [Dkt. #46]. Tucker filed her Complaint in this case on January 1, 2014. [Dkt. #1].

2

the vehicle and began saying something to one of the persons being detained.[2] Thereafter a second female—later identified as Tucker—exited the vehicle and began walking toward Haney.

According to Haney, Tucker "appeared to be angry at Defendant Haney and was yelling at her son, Christopher Bruce." [Dkt. #11, Statement of Fact #8 (citing Ex. 2, Plaintiff's Complaint, Ex. 3, Police Report and Ex. 4, Mobley Recording, 00:49)]. Tucker admits she was "extremely mad" at her son "because he had previously been grounded and was supposed to return home directly after work." [Dkt. #15, Ex. 1, Tucker Affid., ¶4]. She acknowledges she "may have cursed at the time" because she was upset and "very agitated," but asserts "that agitation was direct[ed] solely at my son, and never at Defendant Haney." [*Id.*, ¶6].

Haney contends he twice ordered Tucker to go back to her car and pointed back at the car as he gave the command. [Dkt. #11, Statement of Fact #8 (citing Ex. 3, Police Report and Ex. 4, Mobley Recording, 00:49, 00:52)]. Tucker denies this, but states in her affidavit, "I remember Defendant Haney pointed at his vehicle, and I told him that I was talking to my son. That was the very first time that he ever told me to do anything." [Dkt. #15, Ex. 1, Tucker Affid., ¶7]. The parties agree that Tucker continued to walk towards Defendant Haney and her son. [Dkt. #11, Statement of Fact #9 (citing Ex. 2, Complaint, and Ex. 5, Haney Recording); Dkt. #15 at 9, Plaintiff's Response to Statement of Fact #9].

According to Haney, as soon as Tucker got close enough to him, she extended her left arm, with her index finger pointed toward him, and shoved it into his chest. [Dkt. #11, Statement of Fact #11, citing Ex. 5, Haney Recording, 00:36 and Ex. 6, Still Photo from Haney Recording]. Tucker denies making "any aggressive gestures and/or threats to Defendant Haney," and/or shoving her index finger into his chest. [Dkt. #15, Ex. 1, Tucker Affid., ¶¶7, 9]. Taking the facts

---

[2] According to Haney, he advised the woman to return to the vehicle and told her he would be with her in just a moment, and she complied. [Dkt. #11, Defendant's Statement of Fact #6]. Tucker contends she never heard Haney tell her or her passenger to get back into her car. [Dkt. #15, Ex. 1, Tucker Affid., ¶5].

3

in the light most favorable to the plaintiff, the record does not establish that Tucker shoved her index finger into Haney's chest or otherwise made physical contact.

Haney contends that he immediately advised Tucker she was under arrest and attempted to grab her by the arms, but she resisted and pulled away. [Dkt. #11, Statement of Fact #12, citing Ex. 5, Haney Recording, 00:37–00:38]. Tucker does not dispute that Haney advised her she was under arrest, but states, "When Defendant Haney started to grab me, it confused me because I was not a part of the arrest, and didn't feel like I had done anything that would facilitate the need to start grabbing me. In response, I believe I put my hands behind my back so that I could talk with the officer. I had no intent of resisting arrest, I only wanted to explain to the officer that I was talking with my son." [Dkt. #15, Ex. 1, Tucker, Affid., ¶8].

The parties agree that Haney then grabbed Tucker's left wrist. Their versions of what happened next conflict. Haney asserts that he used an arm bar to place Tucker on the ground,[3] and then attempted to handcuff her, but she resisted. [Dkt. #11, Statement of Fact ##13–14, citing Ex. 5, Haney Recording, 00:39–00:40; Ex. 4, Mobley Recording, 00:5500:57 and 00:59; Ex. 3, Police Report]. Because he was by himself and had multiple detainees in the immediate area, he decided to stand Tucker up and place her over the hood of Mobley's patrol car to complete his handcuffing efforts. [*Id.*, Statement of Fact #15, citing Ex. 3, Police Report and Ex. 4, Mobley Recording, 1:007–1:14]. As he lifted her to her feet, she continued to resist his efforts to handcuff her by twisting her upper body and trying to pull her arms from his grasp, and he pulled her arms behind her and handcuffed her. [*Id.*, Statement of Fact ##16–18, citing Ex. 3, Police Report, Ex. 4, Mobley Recording, 1:07–114, 1:20–1:53].

---

[3] In her response, Tucker asserts that Haney "spun her around and then used some 'wrestling move' to throw her on her head." [Dkt. #15 at 11, Response to Statement of Fact #13].

4

In her affidavit, Tucker states, "As soon as I put my hands behind my back, Defendant Haney grabbed my arm and started to pull me towards him" and "[n]ext thing I know, Defendant threw me around and I landed directly on my head on the concrete roadway." [Dkt. #15, Ex. 1, Tucker Affid., ¶¶10-11]. She states, "As soon as I hit, I blacked out as I now understand I had sustained a concussion" and "[t]he next thing I really remember after being body slammed was being in handcuffs, and not around the scene of the arrest, and now knowing what was going on." [*Id.*, ¶11].

## DashCam Footage

Haney has submitted videos showing footage from the DashCams of Officer Mobley's car and defendant's car. [Dkt. #11, Exs. 4 (Mobley) and 5 (Haney)]. The footage from Officer Mobley's car shows Haney and Christopher Bruce standing in front of Mobley's patrol car talking. Haney steps in front of Bruce, says "back up" and gestures in the direction of Mobley's patrol car as Tucker strides toward them from the right, gesturing. Tucker says, "No, I'm not gonna" and continues to advance toward Haney, talking and gesturing. Haney, too, moves toward Tucker. When they are within arms' length, Tucker raises her left arm and swings it toward Haney, then laterally outward. Tucker argues the motion was part of a gesture with both arms whereby she "threw her arms out in frustration." [Dkt. #15 at 5]. Tucker then thrusts her arms behind her back. It is not possible to tell from the video if she touched the officer. Haney grabs her arm and takes her down. Mobley's car obscures any shot of her on the ground. However, within seconds, the video shows Haney pulling Tucker up and leaning her, face-first, over the hood of Mobley's car.[4] A struggle ensues, during which Haney tries to handcuff Tucker. Tucker says, "Take pictures, take pictures!" then says, "I'm going to sue your ass!" and

---

[4] Tucker appears to be fully conscious at this point, and throughout the video.

Haney replies, "Sue it!" Once Haney succeeds in handcuffing Tucker, he pulls her back to a standing position and, holding one arm, walks her back toward his patrol car.

The footage from Officer Haney's car shows Tucker striding from the lower right side of the screen toward the front of Officer Mobley's car, gesturing and apparently talking (although this video has no sound). The video depicts her extending her left hand toward Haney and swiping it laterally outward, either touching or nearly touching Haney's chest, and then thrusting both arms behind her back. Haney then grasps Tucker's left wrist and takes her down. The two then disappear from the view of the camera. The second female walks from Tucker's car toward the altercation. After a few seconds, the female walks back to the Tucker car and Bruce retreats to the car that had been stopped, and leans on the trunk. The female joins him there. Both appear to be taking pictures or video with their cell phones. Shortly thereafter, Haney can be seen walking Tucker back toward his patrol car.

### Charges Against Tucker

Plaintiff was charged in Tulsa County District Court in case number CF-1010-3996 with Assault and Battery on a Police Officer. [Dkt. #11, Ex. 7, OSCN Docket Sheet; Dkt. #15, Ex. 5, Information]. On November 19, 2010, a preliminary hearing was held and plaintiff was bound over for trial by Judge Tom Gillert. [Dkt. #11, Ex. 7, OSCN Docket Sheet]. On April 6, 2011, the case was dismissed. [*Id.*].

### II. Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

6

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670 (citations omitted). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Id.* at 252.

### III. Analysis

### A. Section 1983 Claim

"Section 1983 provides a federal civil cause of action against state officials for the 'deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Becker v.*

7

*Kroll*, 494 F.3d 904, 913 (10th Cir. 2007) (quoting 42 U.S.C. § 1983). "The core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an actionable constitutional violation." *Id.* (citation omitted). Here, Tucker alleges the use of excessive force.

"[B]ecause the Fourth Amendment protects against '*unreasonable* searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty, excessive force claims arising during this period are generally reviewed under a relatively exacting 'objective reasonableness' standard." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (citing, *inter alia*, *Graham v. Connor*, 440 U.S. 386, 894-95 (1989) (emphasis in original).

In *Graham*, the Supreme Court outlined the parameters of a Fourth Amendment excessive force claim, explaining:

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting evade arrest by flight."

*Id.* at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Further:

> With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment

8

violation out of an objectively reasonable use of force; nor will an officer's good
intentions make an objectively unreasonable use of force constitutional.

*Id.* at 396–97 (quotations and citations omitted).

## Qualified Immunity

Haney contends qualified immunity shields him from liability for Tucker's excessive force claim. An assertion of qualified immunity at summary judgment shifts the burden to plaintiff to show that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Frazier v. Ortiz*, 2011 WL 1110648, at *4 (10th Cir. 2011).[5] The court may address these questions in whatever order is appropriate under the circumstances. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."). Here, the court concludes it is appropriate to address the second prong—whether the rights alleged to have been violated were clearly established at the time of the incident—first.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Saucier*, 533 U.S. at 201)). "The question of whether a right is clearly established must be answered 'in light of the specific context of the case, not as a broad general proposition.' That is, the question is not whether the general right to be free from excessive force is clearly established, but whether [the

---

[5] With respect to the first element, i.e., determining whether the officer's conduct violated a constitutional right, the facts are to be taken in the light most favorable to the plaintiff. *See Zia Trust Co. v. Causey*, 597 F.3d 1150, 1154 (10th Cir. 2010). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 370, 380 (2007).

plaintiff] had a clearly established right under the facts of this case." *Id.* (quoting *Saucier*, 533 U.S. at 201). The Tenth Circuit has explained:

> Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. Because the existence of excessive force is a fact-specific inquiry, however there will almost never be a previously published opinion involving exactly the same circumstances. Thus, we have adopted a sliding scale: The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation. In fact, we do not always require case law on point. When an officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, we do not require a second decision with greater specificity to clearly establish the law.

*Morris*, 672 F.3d at 1196-97.

In *Morris*, the Tenth Circuit acknowledged the paucity of case law on the constitutionality of force used in takedowns, stating, "Several cases [cited by the parties] found excessive force based on abusive conduct subsequent to the takedown," but "we have found no cases addressing . . . a forceful takedown that by itself causes serious injury." *Id.* at 1197. It instructed that in the absence of a similar prior case, the court can, nevertheless, conclude a constitutional right was clearly established if the force is clearly unjustified based on the *Graham* factors. *Id.* at 1197–98.

The incident giving rise to the *Morris* case occurred in 2006. *See Morris v. City of Sapulpa*, 2011 WL 1627098, at *1 (N.D. Okla. Apr. 28, 2011). On appeal, the Tenth Circuit acknowledged there was no prior case clearly establishing under what circumstances a plaintiff enjoys a constitutional right against a forceful takedown. *Morris*, 672 F.3d at 1197. The incident giving rise to this lawsuit occurred in 2010. At oral argument, counsel for the parties agreed that no controlling decision involving exactly the same circumstances existed between 2006 and 2010. Therefore, as the Tenth Circuit found in *Morris,* there is no case specifically on

point. The court must therefore weigh the *Graham* factors to determine whether the force Haney used was clearly unjustified. Those factors are: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether she was actively resisting arrest or attempting to evade arrest by flight.

With respect to the first *Graham* factor, Tucker was booked on charges of assault and battery on a police officer and resisting arrest and she was charged with assault and battery on a police officer. However, at oral argument counsel for both parties agreed the offense for which Haney originally detained Tucker was obstructing a police officer, which is a misdemeanor. *See* Okla. Stat. Ann. tit. 21, § 540. This factor weighs slightly in favor of the officer.[6]

With respect to the second factor, Tucker posed at least a moderate threat to the safety of Haney and others. She had aggressively disrupted a situation in which a single officer was responsible for detaining and questioning three individuals after the car's driver had fled the scene. She threatened and cursed at her son and refused the officer's order to back away. Haney was entitled to use what reasonable force was necessary to maintain order at the scene and to arrest Tucker for obstructing a police officer. This factor weighs in favor of the officer.

Finally, with respect to the third factor, video evidence confirms that Tucker resisted arrest. After approaching her son and the officer in an aggressive and hostile manner, she defied the officer's order to back away and then swiped toward the officer's chest with her left hand. When the officer told her she was under arrest and reached for her arm, the videos show—and she admits in her affidavit—that she pulled it away and put her arms behind her back, thus evidencing an apparent attempt to resist arrest. At that point, Haney grabbed Tucker's left arm

---

[6] In *Morris*, the court found the first *Graham* factor to weigh "slightly" in favor of an officer who had executed a forceful takedown of the plaintiff when officer was arresting him for assault, because the charge is a misdemeanor under Oklahoma law, Okla. Stat. Ann. tit. 21, § 644(A). *Id.* at 1195.

and used an arm bar and took her to the ground. Insofar as Tucker resisted the arrest, the third factor weighs in favor of the officer.

Based on a weighing of the *Graham* factors, the court cannot conclude the officer's use of force was "clearly unjustified." *Morris*, 672 F.3d at 1197–98. *See also Yadon v. Hilton*, 2013 WL 160445, at *3–*5 (D. Kan. Jan. 15, 2013).[7]

The court need not reach the issue of whether Haney's conduct violated Tucker's constitutional right against the use of excessive force.

Accordingly, the court concludes Haney is entitled to qualified immunity. Having reached this conclusion, the court need not address Haney's argument that he is entitled to summary judgment on the merits of Tucker's § 1983 claim.

### B. Remaining Claims

Tucker's Complaint captions her "Causes of Action" as "Deprivation of Federal Civil Rights 42 U.S.C. § 1983," but she also alleges violations of "the statutes of the State of Oklahoma concerning the lawful use of force by law enforcement personnel." The Complaint did not specify what state statutes Haney violated, nor did Tucker, in her response, attempt to refute Haney's motion for summary judgment on this allegation. Additionally, counsel for Tucker admitted at oral argument that the alleged violation of state statutes is not a separate claim.

Likewise, Tucker failed to refute Haney's motion with respect to the Complaint's allegations that she was arrested without probable cause and maliciously prosecuted, and/or that

---

[7]In *Yadon*, the court, citing, *inter alia*, *Morris* and applying the *Graham* factors, held the defendant officer was entitled to qualified immunity where he put his elbow under plaintiff's shoulder and the two of them went to the ground. There, the plaintiff, who had been involved in a traffic accident, was yelling and flailing his arms in the vicinity of officers and, after being told he was under arrest for disorderly conduct and ordered to put his hands behind his back, turned away and tried to get into his van. The court cataloged numerous cases from the Tenth Circuit and other circuits in which courts examined forceable takedowns. *Id.* at *5.

12

Haney's actions were intentional, arbitrary and conscience shocking. [Dkt. #2, Complaint, ¶¶ 10, 13-15]. Accordingly, Haney is entitled to summary judgment with respect to these factual allegations. *See* Fed. R. Civ. P. 56(e)(4).

## IV. Conclusion

For the reasons set forth above, Haney's Motion for Summary Judgment [Dkt. #11] is granted.

ENTERED this 13th day of November, 2014.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT